Stacey C. Stone, Esq.
Email: sstone@hwb-law.com

Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

HEATHER BENNETT, JAMES BARRETT,
AMY BREAUX, NATHAN CAREY, KENNY
KNAPP, PATRICIA MORGAN, RIK PRUETT,
and JESSICA WARMBRODT,

                Plaintiffs,

      v.

BETH WELDON, in her capacity as Mayor for
the City and Borough of Juneau, MICHELLE
BONNET HALE, WADE BRYSON,
WÁAHLAAL GÍIDAAK BARBARA BLAKE,
MARIE GLADZISZEWSI, ALICIA HUGHES-
SKANDIJS, GREG SMITH, CAROLE TRIEM,
and CHRISTINE WOLL, in their capacity as
members of the Assembly for the City and
Borough of Juneau,

                Defendants.

Case No. 3:22-cv-_____

## COMPLAINT AND DEMAND FOR JURY TRIAL

COME NOW Plaintiffs Heather Bennett, James Barrett, Amy Breaux, Nathan Carey,

Kenny Knapp, Patricia Morgan, Rik Pruett, and Jessica Warmbrodt (hereinafter "Plaintiffs"),

by and through their counsel of record, Holmes Weddle & Barcott, P.C., and for their complaint

against Defendants Beth Weldon, in her official capacity as Mayor of the City and Borough of

Juneau, Michelle Bonnet Hale, Wade Bryson, Wáahlaal Gíidaak Barbara Blake, Marie

Gladziszewsi, Alicia Hughes-Skandijs, Greg Smith, Carole Triem, Christine Woll state as

follows:

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
JUNEAU, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

COMPLAINT AND DEMAND FOR JURY TRIAL         Page 1 of 26
*Heather Bennett, et al. v. Beth Weldon, et al.*         Case No. 3:22-cv-_____
Case 1:22-cv-00002-HRH   Document 1   Filed 02/25/22   Page 1 of 26

## I.    INTRODUCTION

1.    On March 16, 2020, in response to COVID-19, the Mayor of the City and Borough of Juneau ("CBJ"), Defendant Beth Weldon ("Mayor"), executed Resolution No. 2884 memorializing the Assembly's declaration of a local emergency within the CBJ and request for the Governor of the State of Alaska to provide State assistance to CBJ in its response to the virus.  The Resolution further authorized the Manager to implement any orders necessary to prevent the transmission of infectious disease and to take measures to ensure that all cases of contagious disease were subject to proper control and treatment with Assembly approval recommended prior to the Manager issuing any orders related to private property, mass quarantine/isolation or related to rationing of goods or supplies.

2.    On April 20, 2020, the Mayor issued ordinance Nos. 2020-15 and 2020-16(am) memorializing the Assembly's amendment of the CBJ Municipal Code to add provisions relating to declarations of emergencies and persons authorized to act in the event of declared emergencies, including creation of an Emergency Management Organization.  The Manager, or someone appointed by the Manager, was designated as the Director of CBJ's Emergency Management Organization.

3.    Since that time, for a period of over twenty months, the Mayor has issued various emergency ordinances regarding COVID-19 mitigation strategies, social distancing, restrictions for unvaccinated persons, restrictions on the indoor capacity of businesses, requirements for use of face coverings in public places, and establishing penalties and civil enforcement options for violation of the emergency ordinances.  Additionally, the Manager has issued various orders and proclamations regarding COVID-19 risk levels, thereby implementing various mitigation strategies.

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
JUNEAU, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

COMPLAINT AND DEMAND FOR JURY TRIAL                    Page 2 of 26
*Heather Bennett, et al. v. Beth Weldon, et al.*                    Case No. 3:22-cv-_____
Case 1:22-cv-00002-HRH    Document 1    Filed 02/25/22    Page 2 of 26

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
JUNEAU, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

4.      The various emergency ordinances adopted by the Assembly and issued by the Mayor relating to COVID-19[1] are arbitrary, capricious and predicated on a continuing emergency that does not exist or are not emergent at all and therefore outside of the authority granted to the government by its citizens.  Similarly, the various orders, declarations and proclamations issued pursuant to the emergency ordinances are arbitrary and capricious.

5.      The continuing emergency ordinances have stripped the citizens of Juneau of their inherent fundamental rights.  Juneau citizens' daily activities have been dictatorially micromanaged and restricted by these overzealous emergency ordinances infringing on the most basic freedoms.  These rights are being denied due to unfounded fear and intentional manipulation.

6.      This usurpation of power has been perpetuated under the guise of SARS-CoV2 virus and the COIVD-19 that it has the ability to cause in infected individuals.  When COVID-19 first appeared in Alaska, and namely Juneau, it was novel, there was little reliable data, and our collective experience was limited.  Approaching two years later, however, we are well past the nascent stage.  Conditions on the ground have changed, and Juneau citizens as a populous know far more about remedies and preventions, and have had ready access to mitigation tools such as vaccine and testing to the extent they so desire.

7.      The evidence that COVID-19 is not as dangerous as originally anticipated and predicted has continued to steadily mount and is now overwhelming.

8.      All life is precious, but the infections and death figures and rates do not even come close to approaching the dire forecasts and models presented to the Juneau public in

---

[1] City and Borough of Juneau emergency ordinances can be found at https://juneau.org/archive.

COMPLAINT AND DEMAND FOR JURY TRIAL                                         Page 3 of 26
*Heather Bennett, et al. v. Beth Weldon, et al.*                              Case No. 3:22-cv-_____

March 2020. COVID-19 lags far behind cancer, heart disease and accidents as a cause of death in Alaska, and these are conditions for which no emergency has or ever will be declared.

9. The plaintiffs in this case have all been injured in various capacities by the unconstitutional restrictions placed by the defendant. Without court action, the plaintiffs will be left without redress.

10. Plaintiffs seek, among other remedies, a declaratory judgment stating that Resolution No. 2884 and the emergency ordinances relating to COVID-19 are null and void, because the premise upon which they are based clearly show a lack of exigent circumstances to continue to justify an emergency.

11. Plaintiffs respectfully request that this court, as a coequal branch of government, declare unconstitutional the actions taken by the Mayor, Assembly and Manager.

## II. PARTIES

12. Plaintiffs are residents of the CBJ, and have suffered injuries as a direct and proximate result of the imposition of the continuing emergency ordinances, which have infringed their civil liberties guaranteed under the U.S. Constitution and the Alaska Constitution.

13. Plaintiff Heather Bennett, is an individual whose personal livelihood has been impacted as a result of the emergency ordinances.

14. Plaintiff James Barrett is an individual whose personal and economic livelihood has been impacted as a result of the emergency ordinances. As a result of the emergency ordinances, the two businesses owned by Mr. Barrett had to close with business losses of approximately $2 million.

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
JUNEAU, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

COMPLAINT AND DEMAND FOR JURY TRIAL
Page 4 of 26
*Heather Bennett, et al. v. Beth Weldon, et al.*
Case No. 3:22-cv-_____
Case 1:22-cv-00002-HRH   Document 1   Filed 02/25/22   Page 4 of 26

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
JUNEAU, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

15. Plaintiff Amy Breaux is an individual whose personal and economic livelihood has been impacted as a result of the emergency ordinances. Ms. Breaux is a veteran with diagnosed medical conditions that are exempted by the emergency ordinances, but whose exemption has not been honored in CBJ.

16. Plaintiff Nathan Carey is an individual whose personal and economic livelihood has been impacted as a result of the emergency ordinances. Mr. Carey is a contractor who works on elevators in Juneau and who has experienced adverse medical conditions as a result of being required to wear a mask.

17. Plaintiff Kenny Knapp is an individual who suffers from medical conditions that prevent him from breathing while wearing a face mask. As a result of his medical inability to wear a mask, and due to the emergency ordinances regarding mask wearing, he was denied entry to testify at an assembly meeting even though the emergency ordinances allow for exemptions.

18. Plaintiff Patricia Morgan is an individual whose personal and economic livelihood has been impacted as a result of the emergency ordinances. Ms. Morgan is a business owner and is employed part time at CBJ's city swimming pool. Ms. Morgan has experienced financial loss as a result of the emergency ordinances requiring masks and that resulted in closure of the city's swimming pool. Ms. Morgan also has custody of a granddaughter whose medical mask exemption is not being honored at facilities located in CBJ.

19. Plaintiff Rik Pruett is an individual whose personal and economic livelihood has been impacted as a result of the emergency ordinances. As a result of the emergency ordinances that adversely affected attendance at the CBJ Public Market, Mr. Pruett lost a significant portion of his business income from the Public Market.

COMPLAINT AND DEMAND FOR JURY TRIAL                                    Page 5 of 26
*Heather Bennett, et al. v. Beth Weldon, et al.*                    Case No. 3:22-cv-_____
Case 1:22-cv-00002-HRH   Document 1   Filed 02/25/22   Page 5 of 26

20.    Plaintiff Jessica Warmbrodt is an individual whose personal, emotional and social livelihood has been impacted as a result of the emergency ordinances.  As a result of the emergency ordinances Ms. Warmbrodt was forced to wear a mask and available treatment was withheld during labor, delivery and birth of her child at Bartlett Memorial Hospital.

21.    Defendant Mayor Beth Weldon is, and was at times relevant, the Mayor of the CBJ.

22.    Defendants Michelle Bonnet Hale, Wade Bryson, Wáahlaal Gíidaak Barbara Blake, Marie Gladziszewsi, Alicia Hughes-Skandijs, Greg Smith, Carole Triem, and Christine Woll are, and at times relevant, members of the Assembly of CBJ.

### III.    JURISDICTION AND VENUE

23.    This court has original jurisdiction pursuant to 28 USC § 1331 as this action rises under the Constitution of the United States, as this matter involves multiple claims arising under the 1st, 4th, 5th, 6th, 9th and 14th Amendments and related precedent.

24.    This court also has jurisdiction pursuant to 42 USC § 1983, as this matter involves the deprivation of rights, protections, privileges and immunities secured by the U.S. Constitution.

25.    This court has supplemental jurisdiction over the related Alaska law claims pursuant to 28 USC § 1367.

26.    Venue is proper pursuant to 28 USC § 1391 as Defendants are residents of Alaska, and the events that gave rise to the claim occurred in Alaska.

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
JUNEAU, AK  99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

COMPLAINT AND DEMAND FOR JURY TRIAL                                      Page 6 of 26
*Heather Bennett, et al. v. Beth Weldon, et al.*                Case No. 3:22-cv-_____
Case 1:22-cv-00002-HRH   Document 1   Filed 02/25/22   Page 6 of 26

## IV.    JURY DEMAND

27.    Pursuant to Fed. R. Civ. P. 38 and Plaintiffs hereby demand a trial by jury in this action of all issues so triable.

## V.    STATEMENT OF FACTS

28.    On January 21, 2020, the Centers for Disease Control and Prevention ("CDC") confirmed the first case of COVID-19 in the United States.[2]

29.    On February 11, 2020, the World Health Organization ("WHO") reported on its website that, "[m]ost people infected with the COVID-19 virus will experience mild to moderate respiratory illness and recover without requiring special treatment.  Older people and those with underlying medical problems like cardiovascular disease, diabetes, chronic respiratory disease, and cancer are more likely to develop serious illness."[3]

30.    On March 9, 2020, the CDC issued an alert that individuals over the age of 60 with certain preexisting conditions and co-morbidities are likely at higher risk of fatality if COVID-19 is contracted.[4]

31.    On March 11, 2020, Governor Dunleavy of the State of Alaska issued a Public Health Disaster Emergency Declaration for COVID-19.[5]    Therein, Governor Dunleavy

HOLMES WEDDLE & BARLOW, PC
701 WEST EIGHTH AVENUE, SUITE 700
JUNEAU, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

---

[2]  https://www.cdc.gov/media/releases/2020/p0121-novel-coronavirus-travel-case.html (last visited February 22, 2022).

[3]  https://www.who.int/health-topics/coronavirus#tab=tab_1 (last visited February 22, 2022).

[4]  https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited February 22, 2022).

[5]  https://gov.alaska.gov/wp-content/uploads/sites/2/COVID-19-Disaster-Packet.pdf (last visited February 22, 2022).

COMPLAINT AND DEMAND FOR JURY TRIAL                                    Page 7 of 26
*Heather Bennett, et al. v. Beth Weldon, et al.*                    Case No. 3:22-cv-_____
Case 1:22-cv-00002-HRH   Document 1   Filed 02/25/22   Page 7 of 26

cautioned that the Commissioner of Alaska HSS certified that it was "highly probable that an outbreak of COVID-19" would occur in the State of Alaska in the near future.

32.     On March 16, 2020, Mayor Weldon issued the Assembly's Resolution No. 2884 declaring a local emergency in response to COVID-19 and requesting state and federal assistance.

33.     On April 20, 2020, Mayor Weldon issued the Assembly's Ordinance No. 2020-15 amending Chapter 03.35 of CBJ's Municipal Code, titled Continuity of Government, and expanding those authorized to declare an emergency and to exercise powers and duties during the event of a declared emergency.

34.     On April 20, 2020, Mayor Weldon issued the Assembly's Ordinance No. 2020-16(am) amending Chapter 03.25 of CBJ's Municipal Code, titled Emergency Management Organization, and creating an emergency management organization to plan for, respond to, recover from, and to mitigate injury or damage resulting from disaster caused by enemy attack, sabotage or other hostile action, natural causes, public health threats or similar emergencies. The Manager was designated as the Director of CBJ's Emergency Management Organization.

35.     On May 28, 2020 Mayor Weldon issued the Assembly's Emergency Ordinance No. 2020-25 requiring use of cloth face coverings on Capital Transit Buses and in CBJ facilities or areas of public facilities as designated and posted by the Manager.  By its terms the emergency order expired June 30, 2020.

36.     On June 29, 2020 Mayor Weldon issued the Assembly's Emergency Ordinance No. 2020-34 reflecting terms similar to Emergency Ordinance No. 2020-25 regarding use of cloth face coverings for Capital Transit Buses and CBJ facilities with an expiration date of September 22, 2020.

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
JUNEAU, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

COMPLAINT AND DEMAND FOR JURY TRIAL                              Page 8 of 26
*Heather Bennett, et al. v. Beth Weldon, et al.*                    Case No. 3:22-cv-_____
Case 1:22-cv-00002-HRH   Document 1   Filed 02/25/22   Page 8 of 26

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
JUNEAU, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

37.     On July 20, 2020 Mayor Weldon issued the Assembly's Emergency Ordinance No. 2020-41 mandating use of cloth face coverings when indoors in public settings or communal spaces outside the home with limited exceptions.  By its terms the emergency order expired 90 days after adoption on July 20, 2020 (which was October 18, 2020).

38.     On September 21, 2020 Mayor Weldon issued the Assembly's Emergency Ordinance No. 2020-45 reflecting terms similar to Emergency Ordinance No. 2020-34 regarding use of cloth face coverings for Capital Transit Buses and CBJ facilities with an expiration date 90 days after adoption on September 21, 2020 (which was December 20, 2020).

39.     On September 21, 2020 Mayor Weldon issued the Assembly's Emergency Ordinance No. 2020-46 adopting Mitigation Strategies set forth in Exhibit A to the emergency ordinance and providing for penalties for non-compliance.  The Mitigation Strategies were classified according to four (4) incident risk levels,[6] each of which reflected graduated levels of restrictions imposed for face coverings, gatherings, personal services and travel depending upon the level of risk declared by the Manager.  By its terms the emergency ordinance was to expire 180 days after adoption on September 21, 2020 (which was March 20, 2021).

40.     On September 21, 2020 Mayor Weldon also issued the Assembly's Emergency Ordinance No. 2020-49 reflecting terms similar to Emergency Ordinance No. 2020-41 mandating use of cloth face coverings when indoors in public settings or communal spaces outside the home.  The emergency ordinance reflected an expiration date 90 days after adoption on September 21, 2020 (which was December 20, 2020).

---

[6] The incident risk levels reflected in Exhibit A were (a) very high, (b) high, (c) moderate, an (d) minimal.

COMPLAINT AND DEMAND FOR JURY TRIAL                                      Page 9 of 26
*Heather Bennett, et al. v. Beth Weldon, et al.*                        Case No. 3:22-cv-_____

41.     On October 26, 2020 Mayor Weldon issued the Assembly's Emergency Ordinance No. 2020-52 repealing Emergency Ordinance No. 2020-46 and amending the Mitigation Strategies to relax restrictions on restaurants, bars, clubs, breweries, etc.  The emergency ordinance reflected an expiration date 180 days after adoption on October 20, 2020 (which was April 24, 2021).

42.     On December 11, 2020, The U.S. Food and Drug Administration ("FDA") issued the first Emergency Use Authorization ("EUA") for the Pfizer-BioNTech COVID19 Vaccine, allowing its distribution and use in the United States.[7]

43.     On December 18, 2020, the FDA issued its second EUA for the Moderna COVID-19 Vaccine, allowing its distribution and use in the United States.[8]  These vaccinations continue to be readily available to those residents of the State of Alaska who elect to obtain the same.

44.     On December 14, 2020 Mayor Weldon issued the Assembly's Emergency Ordinance No. 2020-61 combining terms previously reflected in Emergency Ordinance No. 2020-45 and 2020-49 regarding use of cloth face coverings for Capital Transit Buses and CBJ facilities and use of cloth face coverings when indoors in public settings or communal spaces. The emergency ordinance reflected an expiration date 180 days after adoption on December 14, 2020 (which was June 12, 2021).

---

[7]     https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/pfizer-biontech-covid-19-vaccine (last visited February 22, 2022).

[8]     https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/moderna-covid-19-vaccine (last visited February 22, 2022).

COMPLAINT AND DEMAND FOR JURY TRIAL                                    Page 10 of 26
*Heather Bennett, et al. v. Beth Weldon, et al.*                    Case No. 3:22-cv-_____
Case 1:22-cv-00002-HRH   Document 1   Filed 02/25/22   Page 10 of 26

HOLMES WEDDLE & BARLOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
JUNEAU, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

45. On February 14, 2021, Governor Dunleavy declined to further extend the Declaration of Public Health Disaster Emergency, and the same expired.[9]

46. On April 26, 2021 Mayor Weldon issued the Assembly's Emergency Ordinance No. 2021-11 adopting updated Mitigation Strategies set forth in Exhibit A thereto. The updated Mitigation Strategies added two classifications to the original four, and the three "minimal" classifications now imposed various restrictions depending upon the percentage of the CBJ population who were fully vaccinated. By its terms the emergency order expired July 31, 2021 unless earlier terminated.

47. On June 14, 2021 Mayor Weldon issued the Assembly's Emergency Ordinance No. 2021-22 repealing Emergency Ordinance 2021-11 and adopting updated Mitigation Strategies set forth in Exhibit A. The updated Mitigation Strategies removed one of the three "minimal" classifications. The remaining two "minimal" classifications reflected various restrictions depending upon the percentage of the CBJ population who were fully vaccinated. By its terms the emergency order expired July 31, 2021 unless earlier terminated.

48. On July 28, 2021 Mayor Weldon issued the Assembly's Emergency Ordinance No. 2021-33(am) repealing Emergency Ordinance 2021-22 and adopting updated Mitigation Strategies set forth in Exhibit A thereto. The updated Mitigation Strategies removed two of the three "minimal" classifications and added a "Fully Open" category reflecting reduced restrictions if more than 97% of the CBJ population were able to be fully vaccinated. By its terms the emergency order expired October 31, 2021 unless earlier terminated.

---

[9] http://dhss.alaska.gov/News/Pages/2021/20210218-DDAlert.aspx#:~:text=As%20of%20February%2014%2C%202021,to%20COVID%2D19%2C%20 expired (last visited April 26, 2021).

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
JUNEAU, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

COMPLAINT AND DEMAND FOR JURY TRIAL                    Page 11 of 26
*Heather Bennett, et al. v. Beth Weldon, et al.*         Case No. 3:22-cv-_____
Case 1:22-cv-00002-HRH   Document 1   Filed 02/25/22   Page 11 of 26

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
JUNEAU, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

49.     On September 29, 2021 Mayor Weldon issued the Assembly's Emergency Ordinance No. 2021-42(am) repealing Emergency Ordinance 2021-33(am) and adopting updated Mitigation Strategies set forth in Exhibit A thereto to extend the Mitigation Strategies beyond October 31, 2021 based upon increased daily COVID-19 positive cases.   By its terms the emergency order expires March 1, 2022 unless earlier terminated.

50.     On January 10, 2022 Mayor Weldon issued the Assembly's Emergency Ordinance No. 2021-46(am) repealing Emergency Ordinance 2021-42(am) and adopting updated certain Mitigation Strategies.  By its terms the emergency order expires April 30, 2022 unless earlier terminated.

51.     Alaska HSS reports that COVID-19 has killed 19 Juneau residents, representing .000589% of CBJ's population.  There have been 118 hospitalizations in Juneau, representing .00366% of CBJ's population. [10]  This figure alone establishes that there is no justification for the Emergency nor the emergency ordinances.

52.     While 7,333 cases have been identified to date in Juneau, 19 individuals in Juneau have died.[11]  Therefore, 99.997% of individuals in Juneau who were identified as having tested positive have survived COVID-19.

53.     From the very beginning of awareness of COVID-19, it was clear that COVID-19 disproportionately affects the elderly, subjecting them to the highest risks of infection if

---

[10].  https://experience.arcgis.com/experience/af2efc8bffbf4cdc83c2d1a134354074/ (last visited February 22, 2022).

[11] *Id.*

COMPLAINT AND DEMAND FOR JURY TRIAL                                     Page 12 of 26
*Heather Bennett, et al. v. Beth Weldon, et al.*                          Case No. 3:22-cv-_____

exposed, hospitalization and death.[12]  This was likewise true in Alaska, where death rates were highest among persons age 70 to 79 (27%), closely followed by those over the age of 80 (25%).[13]

54.     Based on this data, defendants could have crafted far less burdensome mandates designed specifically to protect the most vulnerable age demographic, rather than infringing on the inherent rights of all Juneau citizens.  The defendants could have exercised their duty to be cognizant of and protective of individual civil liberties and engage a narrowly tailored strategy of containment for the segments of the population most at risk, without causing profound disruptions to the entire economy and all Juneau residents regardless of their risk profile.

55.     Instead of narrowly tailoring interventions, the defendant directed the local government to deploy countermeasures applicable to the entire population, including extreme lockdown policies, massive governmental intrusions into plaintiffs' daily lives, and maximal invasions of plaintiffs' constitutional freedoms.

56.     Alaska experienced the following non-COVID-19 deaths in the year 2017, all without any proclamation of a civil emergency: 1) malignant neoplasms (cancer) – 908 deaths, 2) diseases of the heart – 799 deaths, and 3) unintentional injuries – 427 deaths.[14]

---

[12] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited February 22, 2022).

[13] https://experience.arcgis.com/experience/af2efc8bffbf4cdc83c2d1a134354074/ (last visited February 22, 2022).

[14] http://dhss.alaska.gov/dph/VitalStats/Documents/PDFs/Leading%20Causes%20of%20Death%20in%20Alaska 2017.pdf (last visited April 23, 2021).

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
JUNEAU, AK  99501-3408
TELEPHONE (907) 274-0408
FACSIMILE (907) 277-4657

COMPLAINT AND DEMAND FOR JURY TRIAL                                    Page 13 of 26
*Heather Bennett, et al. v. Beth Weldon, et al.*                          Case No. 3:22-cv-_____
Case 1:22-cv-00002-HRH   Document 1   Filed 02/25/22   Page 13 of 26

57.     Juneau experienced the following non-COVID-19 deaths in the years 2011-2013, all without any proclamation of a civil emergency: 1) malignant neoplasms (cancer) – 131 deaths and 2) diseases of the heart – 97 deaths.[15]

58.     In a 2015 study comparing the efficacy of cloth masks to medical masks in hospital healthcare workers results indicated that rates of all infection outcomes ere highest in the cloth mask arm with the rate of influenza-like illness significantly higher compared with the medical mask arm. Cloth masks also had significantly higher rates of influenza-like illness than the control arm.  Penetration of cloth masks by particles was almost 97% compared to 44% for medical masks.[16]

59.     In a study of the physiological impact of the hypercapnia hypoxia generated by masks during aerobic sports practice published online June 6, 2020, researchers concluded that the use of masks in athletes causes hypoxic and hypercapnic breaching as evidenced by increased effort during exercise.[17]

60.     Based upon an online survey of 20,353 parents, teachers and doctors reflecting data on 25,930 children with an average of 270 minutes per day of mask wearing time, 68% of the respondents reported that children complained about impairments caused by wearing the mask.  Side effects included irritability (60%), headache (53%), difficulty concentrating (50%),

---

[15].  https://dhss.alaska.gov/dph/vitalstats/documents/stats/death_statistics/leading_causes_census/frame.html (last visited February 22, 2022).

[16]  MacIntyre, C. Raina, Seale, Holly, Dung, Tham Chi, Hien, Hguyen Tran, Nga, Phan Thi, Chughtai, Abrar Ahmad, Rahman, Bayzidur, Dwyer, Dominic E., and Wang, Quanyi; *A cluster randomized trial of cloth masks compared with medical masks in healthcare workers*, published online 2015 Apr 22 (https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4420971/) (last visited February 22, 2022).

[17]  Pifarre, Fernando, Zabala, Diego Dulanto, Grazioli, Gonzalo and de Yzaguirre I Maura, Ignasi; *COVID-19 and mask in sports;* published online 2020 June 6 (https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7275167/) (February 22, 2022).

COMPLAINT AND DEMAND FOR JURY TRIAL                                                Page 14 of 26
*Heather Bennett, et al. v. Beth Weldon, et al.*                                    Case No. 3:22-cv-_____
Case 1:22-cv-00002-HRH   Document 1   Filed 02/25/22   Page 14 of 26

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
JUNEAU, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

less happiness (49%), reluctance to go to school/kindergarten (44%), malaise (42%), impaired learning (38%) and drowsiness/fatigue (37%).[18]

61.     In a recent study published by John Hopkins Institute for Applied Economics, Global Health, and the Study of Business Enterprise in January, 2022, the authors concluded that lockdown policies are ill-founded and should be rejected as a pandemic policy instrument. In this study non-pharmaceutical interventions (NPIs), commonly known as "lockdowns," described any government mandate which directly restricted peoples' possibilities including mandated interventions such as closing schools or businesses.  The study concluded that lockdowns have had little to no effect on COVID-19 mortality.[19]

62.     Mask mandates are purportedly dictated for the reason of slowing the spread of COVID19.  Whether masks actually protect individuals from COVID19 is a matter of rigorous debate. Regardless, when discussing public health, it is necessary to not only weigh the benefits but the risks of a mask obligation.

63.     A mask is a medical device, and should only be prescribed by medical personnel with informed consent and never mandated by a bureaucrat or public official.

## VI.     COUNT I – CESSATION OF EMERGENCY

64.     Plaintiffs adopt all of the preceding paragraphs and incorporate them by reference, as if fully set forth herein.

---

[18] Schwarz, Silke, Jemetzky Ekkehart Krafft, Hanno, Maurer, Tobias, and Martin, David; *[Corona child studies "Co-Ki": first results of a Germany-wide register on mouth and nose covering (mask) in children]; 2021 Feb 22 (*https://pubmed.ncbi.nlm.nih.gov/33642617/) (last visited February 22, 2022).

[19]  Herby, Jonas, Jonung, Lars, Hanke, Steve H., *Studies in Applied Economics: A Literature Review and Meta-Analysis of the Effects of Lockdowns on COVID-19 Mortality;* (https://sites.krieger.jhu.edu/iae/files/2022/01/A-Literature-Review-and-Meta-Analysis-of-the-Effects-of-Lockdowns-on-COVID-19-Mortality.pdf) (last visited February 22, 2022).

COMPLAINT AND DEMAND FOR JURY TRIAL                                    Page 15 of 26
*Heather Bennett, et al. v. Beth Weldon, et al.*                       Case No. 3:22-cv-_____
Case 1:22-cv-00002-HRH   Document 1   Filed 02/25/22   Page 15 of 26

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
JUNEAU, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

65.     In *Home Building and Loan Association v. Blaisdell*, 290 U.S. 398 (1934), the U.S. Supreme Court stated: "Whether an emergency exists upon which the continued operation of the law depends is always open to judicial inquiry." 290 U.S. at 442, citing *Chastleton Corp. v. Sinclair*, 264 U.S. 543 (1924).

66.     In *Sinclair*, the Supreme Court stated: "A law depending upon the existence of emergency or other certain state of facts to uphold it may cease to operate if the emergency ceases or the facts change." 264 U.S. at 547.  Both *Blaisdell* and *Sinclair* are clear authority that an emergency and the rules promulgated thereunder must end when the facts of the situation no longer support the continuation of the emergency.

67.     They also forbid this court to merely assume the existence of a "public health crisis" based on the pronouncements of the defendant. They are clear authority that it is the duty of the court of first instance to grapple with this question and conduct an inquiry. "[A] Court is not at liberty to shut its eyes to an obvious mistake when the validity of the law depends upon the truth of what of what is declared." *Id*. The *Sinclair* court instructed lower courts to inquire into the factual predicate underlying a declaration of emergency, where there appears to have been a change of circumstances:  "the facts should be gathered and weighed by the court of first instance and the evidence preserved for consideration by this Court if necessary." 264 U.S. at 549.

68.     Defendants' own data, the data produced by the federal CDC and the availability of multiple COVID-19 vaccines demonstrate an undeniable change in circumstances, and that the exigencies underlying the Emergency no longer exist, if they ever did. Plaintiffs have accumulated and will present expert medical and scientific evidence further supporting this

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
JUNEAU, AK  99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

COMPLAINT AND DEMAND FOR JURY TRIAL                                        Page 16 of 26
*Heather Bennett, et al. v. Beth Weldon, et al.*                          Case No. 3:22-cv-_____
Case 1:22-cv-00002-HRH   Document 1   Filed 02/25/22   Page 16 of 26

contention. If the exigencies no longer exist, then the Emergency and the accompanying Emergency Mandates must end.

69.     Plaintiffs therefore seek judgment that the exigencies underlying the Emergency no longer exist, if they ever did; that the Emergency has ended; and that in the absence of a public health emergency, the Defendants lack any reason to continue to infringe on the civil liberties of the citizens of Juneau, thereby nullifying all Emergency Mandates, making them directory not mandatory.

## VII.    COUNT II – RIGHT TO FREE ASSEMBLY, ASSOCIATION AND EQUAL PROTECTION

70.     Plaintiffs adopt all of the preceding paragraphs and incorporate them by reference, as if fully set forth herein.

71.     The First Amendment to the U.S. Constitution states "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people to peaceably assemble, and to petition the government for a redress of grievances." U.S. CONST., amend. I.

72.     As Justice Gorsuch recently espoused in his concurring opinion in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 69 (2020), "Government is not free to disregard the First Amendment in times of crisis."  However, the defendant in continuing to order edicts has wrongly encumbered the rights of plaintiffs' free speech, assembly, association and equal protection.

73.     "The right of free and peaceable assembly for lawful purpose and in a manner without governmental interference or hindrance is a fundamental right, of the very essence of democracy, and is guaranteed under the First Amendment." C.J.S., Constitutional Law § 134.

COMPLAINT AND DEMAND FOR JURY TRIAL                                      Page 17 of 26
*Heather Bennett, et al. v. Beth Weldon, et al.*                          Case No. 3:22-cv-_____
Case 1:22-cv-00002-HRH   Document 1   Filed 02/25/22   Page 17 of 26

74. The Alaska Constitution at Art. 1, § 6 further reiterates and enforces that inherent right, as it states "[t]he right of the people peaceably to assemble, and to petition the government shall never be abridged."

75. Defendants have set forth specific guidelines regarding the ways that people may associate and assemble with total disregard for the U.S. and Alaska Constitutions.

76. Defendants have selected certain activities to place restrictions on, burdening the right to assemble freely and imposing increased costs to assemble in the desired fashion. In such selection, defendant is acting in a manner that treats similarly situated groups disparately violating the inherent protections that government offer equal protection.

77. The Defendants no longer, if at any point, have a substantial government interest by which the regulations she has set forth are narrowly tailored to serve.

78. Plaintiffs therefore seek judgment that the Defendants have violated their fundamental First Amendment rights, deprived them of the equal protection of the laws under the Equal Protection Clause of the 14th Amendment of the U.S. Constitution, and have violated the Alaska Constitution.

## VIII.   COUNT II – RIGHT TO LIFE, LIBERTY, THE PURSUIT OF HAPPINESS, AND THE ENJOYMENT OF REWARDS OF INDUSTRY

79. Plaintiffs adopt all of the preceding paragraphs and incorporate them by reference, as if fully set forth herein.

80. Art. I., §1 of the Alaska Constitution provides that "all persons have a natural right to life, liberty, the pursuit of happiness, and the enjoyment of the rewards of their own industry; that all persons are equal and entitled to equal rights, opportunities, and protection under the law; and that all persons have corresponding obligations to the people and to the State."

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
JUNEAU, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

COMPLAINT AND DEMAND FOR JURY TRIAL                    Page 18 of 26
*Heather Bennett, et al. v. Beth Weldon, et al.*          Case No. 3:22-cv-_____
Case 1:22-cv-00002-HRH   Document 1   Filed 02/25/22   Page 18 of 26

81. In continuing the emergency ordinances, the government has impaired the rights to liberty and enjoyment of rewards of industry in a manner that is not exacting enough given the government interest, if any.

82. Plaintiffs therefore seek judgment that the emergency ordinances and related mandates violate Article I of the Alaska Constitution, and are thereby unconstitutional and must end.

## IX. COUNT III – SUBSTANTIVE DUE PROCESS

83. Plaintiffs adopt all of the preceding paragraphs and incorporate them by reference, as if fully set forth herein.

84. The Court has held that the "core of the concept" of due process is protection against arbitrary government action. *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998).

85. In Planned *Parenthood v. Casey*, 505 U.S. 833, 857, the U.S. Supreme Court stated:

> Roe, however, may be seen not only as an exemplar of Griswold liberty, but as a rule (whether or not mistaken) of personal autonomy and bodily integrity, with doctrinal affinity to cases recognizing limits on governmental power to mandate medical treatment or to bar its rejection. If so, our cases since Roe accord with Roe's view that a State's interest in the protection of life falls short of justifying any plenary override of individual liberty claims. *Cruzan v. Director, Mo. Dept. of Health*, 497 U.S. 261, 278, 111 L. Ed. 2d 224, 110 S. Ct. 2841 (1990); cf., e. g., *Riggins v. Nevada*, 504 U.S. 127, 135, 118 L. Ed. 2d 479, 112 S. Ct. 1810 (1992); *Washington v. Harper*, 494 U.S. 210, 108 L. Ed. 2d 178, 110 S. Ct. 1028 (1990); see also, e. g., *Rochin v. California*, 342 U.S. 165, 96 L. Ed. 183, 72 S. Ct. 205 (1952); *Jacobson v. Massachusetts*, 197 U.S. 11, 24-30, 49 L. Ed. 643, 25 S. Ct. 358 (1905).
>
> To reiterate: "a State's interest in the protection of life falls short of justifying any plenary override of individual liberty claims."

HOLMES WEDDLE & BARCOTT, PC

701 WEST EIGHTH AVENUE, SUITE 700
JUNEAU, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

COMPLAINT AND DEMAND FOR JURY TRIAL                                   Page 19 of 26
*Heather Bennett, et al. v. Beth Weldon, et al.*                     Case No. 3:22-cv-_____
Case 1:22-cv-00002-HRH   Document 1   Filed 02/25/22   Page 19 of 26

86. If government's interest in the protection of life falls so short of being able to override individual liberty interests that it may not be used to prevent the killing of an unborn child, then certainly it cannot impede those individual liberties in an attempt to force ineffective and unproven methods of preventing and/or treating COVID-19 given the substantial survival rates.

## Right to Personal Autonomy and Bodily Integrity

87. The Supreme Court has stated that the protected liberty claims inherent in personal autonomy and bodily integrity include both the right to be free from unwanted medical intervention, and the right to obtain medical intervention:

> As the joint opinion acknowledges, ante, 505 U.S. at 857, this Court has recognized the vital liberty interest of persons in refusing unwanted medical treatment. *Cruzan v. Director, Mo. Dept. of Health,* 497 U.S. 261, 111 L. Ed. 2d 224, 110 S. Ct. 2841 (1990). Just as the Due Process Clause protects the deeply personal decision of the individual to refuse medical treatment, it also must protect the deeply personal decision to obtain medical treatment, including a woman's decision to terminate a pregnancy.

*Id.* at 927.

88. The emergency ordinances have forced all Plaintiffs to wear face masks against their will. Face masks are a medical device. The FDA states: "The FDA regulates face masks, including cloth face coverings, and surgical masks as medical devices when they are marketed for medical purposes. Medical purposes include uses related to COVID-19, such as face masks to help stop the spread of disease…"

## Right to Work

89. The 14th Amendment guarantees a citizen's right to work for a living and support herself by pursuing a chosen occupation. *Board of Regents v. Roth*, 408 U.S. 564, 572

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
JUNEAU, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

COMPLAINT AND DEMAND FOR JURY TRIAL
*Heather Bennett, et al. v. Beth Weldon, et al.*
Page 20 of 26
Case No. 3:22-cv-_____
Case 1:22-cv-00002-HRH   Document 1   Filed 02/25/22   Page 20 of 26

(1972); *Truax v. Raich*, 239 U.S. 33, 41 (1915) ("It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [14th] Amendment to secure.").

90.     Federal district courts adjudicating challenges to State COVID-19 mandates have acknowledged this right, and subjected mandates that implicate it to constitutional review. *County of Butler v. Wolf*, 486 F.Supp.3d. 883 (W.D. Penn. 2020). ("The nature of a state-wide shut down of 'non-life-sustaining' business is such an immediate and unprecedented disruption to businesses and their employees as to warrant constitutional review.").

91.     In holding that Pennsylvania's closure of all "non-life-sustaining" businesses "was so arbitrary as to violate the Business Plaintiffs' substantive due process rights guaranteed by the Fourteenth Amendment," the Butler court stated:

> The Court recognizes that Defendants were facing a pressing situation to formulate a plan to address the nascent COVID-19 pandemic when they took the unprecedented step of sua sponte determining which businesses were "life sustaining" and which were "non-life-sustaining." But in making that choice, they were not merely coming up with a draft of some theoretical white paper, but rather, determining who could work and who could not, who would earn a paycheck and who would be unemployed – and for some – which businesses would live, and which would die. This was truly unprecedented.
>
> An economy is not a machine that can be shut down and restarted at will by government. It is an organic system made up of free people each pursuing their dreams. The ability to support oneself is essential to free people in a free economy.

*Id.* at 925-926.

92.     Without the right to work in a profession of our own choosing, rather than being directed into a profession by the State, or directed not to work and placed on subsidies by the State, we are slaves. The emergency ordinances have deprived Plaintiffs of their right to work

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
JUNEAU, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

COMPLAINT AND DEMAND FOR JURY TRIAL                                             Page 21 of 26
*Heather Bennett, et al. v. Beth Weldon, et al.*                    Case No. 3:22-cv-_____
Case 1:22-cv-00002-HRH   Document 1   Filed 02/25/22   Page 21 of 26

in their chosen occupations, forcibly closing and/or impeding on business, and then crippling the business by making it for a time de jure and then de facto impossible for business.

**Freedom of Movement**

93.     Separate and apart from the right of travel, there is a fundamental right to move about freely in the public. *City of Chicago v. Morales*, 527 U.S. 41, 53-54 (1999) (striking down an anti-loitering ordinance aimed at combatting street gangs and observing that "the freedom to loiter for innocent purposes is part of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment."); *Papachristou v. Jacksonville*, 405 U.S. 156, 164-65 (1972) (citing a Walt Whitman poem in extolling the fundamental right to loiter, wander, walk or saunter about the community); *Bykofsky v. Middletown*, 429 U.S. 964 (1976) (Marshall, J., dissenting) ("The freedom to leave one's house and move about at will is of the very essence of a scheme of ordered liberty, . . . and hence is protected against state intrusions by the Due Process Clause of the Fourteenth Amendment.") (internal citation and quotation marks omitted)); *Waters v. Barry*, 711 F. Supp. 1125, 1134 (D.D.C. 1989) (referencing *Papachristou* and stating "[t]he right to walk the streets, or to meet publicly with one's friends for a noble purpose or for no purpose at all—and to do so whenever one pleases—is an integral component of life in a free and ordered society.").

94.     When in place, the emergency "stay at home" orders require a default of confinement at home, unless a citizen is out for a purpose approved by defendant's orders. Furthermore, the orders also restrict movement to a lesser degree, but still in an unconstitutional fashion. This broad restructuring of the default concept of liberty of movement in a free society eschews any claim to narrow tailoring.

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
JUNEAU, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

COMPLAINT AND DEMAND FOR JURY TRIAL                                    Page 22 of 26
*Heather Bennett, et al. v. Beth Weldon, et al.*                              Case No. 3:22-cv-_____

Case 1:22-cv-00002-HRH   Document 1   Filed 02/25/22   Page 22 of 26

95.    Plaintiffs therefore seek judgment that the defendant has violated their constitutional rights to personal autonomy and bodily integrity, work, and freedom of movement under the Substantive Due Process Clause of the 14th Amendment of the U.S. Constitution.

## X.    COUNT IV – RIGHT OF PRIVACY

96.    Plaintiffs adopt all of the preceding paragraphs and incorporate them by reference, as if fully set forth herein.

97.    Art. I, § 22 of the Alaska Constitution explicitly recognizes the right of privacy, and provides "[t]he right of the people to privacy is recognized and shall not be infringed."

98.    If the government's restrictions interfere with an individual's right to privacy, there must be a proper governmental interest in imposing the restrictions and the means chosen must bear a substantial relationship to the legislative purpose.  If governmental restrictions interfere with an individual's right to privacy, the relationship between means and ends cannot be merely reasonable but close and substantial.  *Ravin v. State,* 537 P.2d 494 (Alaska 1975).

99.    In February, 2020 the Office for Civil Rights ("OCR"), U.S. Department of Health and Human Services (HHS) released a bulletin entitled, "HIPAA Privacy and Novel Coronavirus" which allowed entities to disclose, without a patient's authorization, protected health information.[20] The OCR's bulletin promulgated guidelines violating HIPAA and violating Alaska citizens' right to privacy regarding their personal health information.

---

[20] U.S. Dept. of Health and Human Services, Office for Civil Rights, BULLETIN: HIPAA Privacy and Novel Coronavirus (Feb. 2020) https://www.hhs.gov/sites/default/files/february-2020-hipaa-and-novel-coronavirus.pdf (last visited February 22, 2022).

COMPLAINT AND DEMAND FOR JURY TRIAL                                      Page 23 of 26
*Heather Bennett, et al. v. Beth Weldon, et al.*                        Case No. 3:22-cv-_____
Case 1:22-cv-00002-HRH   Document 1   Filed 02/25/22   Page 23 of 26

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
JUNEAU, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

100.    Subsequently, HHS issued "Notification of Enforcement Discretion under HIPAA to Allow Uses and Disclosures of Protected Health Information by Business Associates for Public Health and Health."[21]   This publication stated that, " As a matter of enforcement discretion, effective immediately, the HHS OCR will exercise its enforcement discretion and will not impose potential penalties for violations of certain provisions of the HIPAA Privacy Rule against covered health care providers or their business associates for uses and disclosures of protected health information by business associates for public health and health oversight activities during the COVID-19 nationwide public health emergency."

101.    The above-referenced guidelines issued by HHS completely diluted the "The Privacy Rule" of HIPAA, which had mandated and unified privacy regulations for patients' PHI. In addition, HIPAA has been disregarded through the provision of the United States Code released on March 27, 2020 42 U.S.C. § 1320b-5 entitled, "Authority to Waive Requirements During National Emergencies," which stated "[T]he patient's right to request privacy restrictions; and the patients' right to confidential communications,' has been waived." *(emphasis added)*.

102.    On April 15, 2021 Alaska's Governor Dunleavy announced that he ordered the Alaska Department of Law to investigate a potential violation of law after the Alaska Department of Health and Social Services shared names and contact information of individuals

---

[21] U.S. Dept. of Health and Human Services, *Notification of Enforcement Discretion under HIPAA to Allow Uses and Disclosures of Protected Health Information by Business Associates for Public Health and Health Oversight Activities in Response to COVID-19*,  https://www.hhs.gov/sites/default/files/notification-enforcement-discretion-hipaa.pdf (last visited February 22, 2022).

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
JUNEAU, AK  99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

COMPLAINT AND DEMAND FOR JURY TRIAL                              Page 24 of 26
*Heather Bennett, et al. v. Beth Weldon, et al.*                    Case No. 3:22-cv-_____
Case 1:22-cv-00002-HRH   Document 1   Filed 02/25/22   Page 24 of 26

receiving COVID-19 vaccines with the Municipality of Juneau[22] and thereby violated Alaska's constitutionally protected right to privacy and the HIPAA Privacy Rule.

103.    Plaintiffs therefore seek judgment that the Defendants in putting forth the government mandates and obtaining private health information have violated the guaranteed right of privacy.

## XI.    COUNT V – SECTION 1983 DAMGES

104.    Plaintiffs adopt all of the preceding paragraphs and incorporate them by reference, as if fully set forth herein.

105.    Plaintiffs are entitled to compensatory damages in an amount that will fairly compensate them based on the injuries sustained as a result of Defendants' conduct.

106.    Plaintiffs' injuries would not have continued to occur without Defendants' acts, and it was Defendants' own actions that brought about or resulted in the continuing injury.

107.    In addition, Plaintiffs are entitled to their actual reasonable attorney's fees and costs due to their status as constitutional Plaintiffs with regard to the State law claims for which this court has supplemental jurisdiction.

### PRAYER FOR RELIEF

WHEREFORE, and for the foregoing reasons, plaintiffs request that this Court:

A.    Declare that the exigencies underlying Mayor Beth Weldon's initial declaration of emergency and subsequent emergency ordinances no longer exist, if they ever did; and in the absence of a public health emergency, the government lacks any reason to continue to

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
JUNEAU, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

---

[22]    https://gov.alaska.gov/newsroom/2021/04/15/governor-dunleavy-orders-investigation-into-unauthorized-sharing-of-dhss-information/.

COMPLAINT AND DEMAND FOR JURY TRIAL                                      Page 25 of 26
*Heather Bennett, et al. v. Beth Weldon, et al.*                        Case No. 3:22-cv-_____

infringe on the rights of the citizens of Juneau, thereby nullifying the emergency and the emergency ordinances and making the same directory not mandatory;

     B.     Declare that the emergency ordinances violate the constitutional right of plaintiffs to peaceably assemble and associate, and their right to the equal protection of the laws;

     C.     Declare that the emergency ordinances violate the right of Plaintiffs to liberty and enjoyment of rewards of industry;

     D.     Declare that the emergency ordinances violate the constitutional right of all Plaintiffs to personal autonomy and bodily integrity, lawful occupation, and freedom of movement;

     E.     Declare that the emergency mandate, emergency ordinances and actions stemming therefrom violate the guaranteed right to privacy;

     F.     Declare that the Defendants have failed to protect individual liberties in violation of law;

     G.     Award Plaintiffs those compensatory damages as proven at trial;

     H.     Award Plaintiffs their reasonable and actual attorney's fees as provided by law; and

     I.     Such other relief as may be just and necessary under the circumstances.

DATED this 23rd day of February, 2022, at Anchorage, Alaska.

HOLMES WEDDLE & BARCOTT, P.C.
Attorneys for Plaintiffs

By: *s/ Stacey C. Stone*
    Stacey C. Stone
    Alaska Bar No. 1005030

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
JUNEAU, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

COMPLAINT AND DEMAND FOR JURY TRIAL             Page 26 of 26
*Heather Bennett, et al. v. Beth Weldon, et al.*          Case No. 3:22-cv-_____
Case 1:22-cv-00002-HRH    Document 1    Filed 02/25/22    Page 26 of 26